**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 26-cv-25687-JB**

RICARDO RODRIGUES GOMES,

Petitioner,

v.

WARDEN, KROME NORTH
SERVICE PROCESSING CENTER,

Respondents.
_______________________________________/

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** comes before the Court upon Petitioner Ricardo Rodrigues Gomes' Verified Petition for Writ of Habeas Corpus (the "Petition"). ECF No. [1]. Respondents filed a Response in opposition to the Petition, and Petitioner filed a reply. ECF Nos. [9], [16]. Upon due consideration of the parties' submissions, the pertinent portions of the record, and the applicable law, for the reasons explained below, the Petition is **DISMISSED WITHOUT PREJUDICE**.

## I. BACKGROUND

Petitioner is a native and citizen of Brazil. ECF No. [7-1] ¶ 6. On January 12, 2022, Petitioner was admitted to the United States at the Miami International Airport as a nonimmigrant visitor. *Id.* ¶ 7. According to Respondents, Petitioner procured his admission by presenting a Brazilian passport and nonimmigrant visa in the name "Paulo Gomes Junior," a false identity, and has never been admitted to any lawful status in his true name. *Id.* ¶ 8.

On March 4, 2025, United States Immigration and Customs Enforcement and Removal Operations ("ICE") officers encountered and arrested Petitioner in South Florida. *Id.* ¶ 9; ECF No. [12-1] at 7–8. That same day, the United States Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA"), charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for having procured admission to the United States by fraud or willful misrepresentation of a material fact, specifically by his use of a passport and visa in the false identity of "Paulo Gomes Junior." *Id.* at 2–3. DHS also issued a Form I-286 Notice of Custody Determination, ordering Petitioner detained without bond under 8 U.S.C. § 1226, and Petitioner requested a custody redetermination by an Immigration Judge ("IJ"). *Id.* at 10. On that same day, ICE transferred Petitioner to the Krome North Service Processing Center in Miami, Florida, where he remained in DHS custody. ECF No. [7-1] at 19.

On March 11, 2025, DHS filed the NTA with the Miami Krome Immigration Court thereby initiating removal proceedings. ECF No. [7-1] ¶ 13. On June 25, 2025, Petitioner appeared for a master calendar hearing with the Immigration Court and was represented by counsel, who waived a reading of the NTA, conceded proper service, admitted the factual allegations, and conceded removability under 8 U.S.C. § 1182(a)(6)(C)(i). *Id.* ¶ 18. The IJ sustained the charge and designated Brazil as the country of removal. *Id.* ¶ 19. Petitioner filed for relief, and the IJ scheduled an individual hearing for August 14, 2025. *Id.* ¶ 20.

Petitioner's individual hearing was ultimately held on October 10, 2025. ECF No. [12-1] at 15–18. At the hearing, Petitioner, through counsel, requested voluntary

departure in lieu of pursuing his previously filed relief. ECF No. [7-1] ¶ 22. DHS opposed voluntary departure, but the IJ granted Petitioner's request for pre-conclusion voluntary departure under 8 U.S.C. § 1229c(a)(1), under safeguards. *Id.* ¶ 23.

In the October 10, 2025, written order, the IJ found Petitioner inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i); noted that Petitioner's applications for relief were withdrawn with prejudice; and granted voluntary departure under safeguards, ordering Petitioner to depart the United States on or before December 10, 2025. *Id.* ¶ 24. The order provided that if Petitioner failed to voluntarily depart by that date, an alternate order of removal to Brazil would automatically take effect. *Id.* ¶ 25. Both parties waived appeal, and no petition for review was filed. *Id.* ¶ 26.

Petitioner did not depart the United States by the December 10, 2025, voluntary departure deadline. *Id.* ¶ 31. As a result, the alternate order of removal to Brazil immediately took effect and Petitioner's order of removal became administratively final. *Id.* ¶¶ 32, 33.

Thereafter, DHS took steps to obtain valid travel documentation for Petitioner in his true name. *Id.* ¶ 34. On December 29, 2025, ICE requested a travel document from Brazilian authorities and on February 17, 2026, ICE received a Brazilian travel document for Petitioner. *Id.* ¶¶ 35–36. With a valid travel document in hand and a final order of removal in effect due to Petitioner's failure to voluntarily depart, ICE scheduled Petitioner for transfer and removal to Brazil. *Id.* ¶ 37. On March 7, 2026, ICE transferred Petitioner to the Alexandria Staging Facility in Louisiana and then

to the Central Louisiana ICE Processing Center on March 9, 2026, in preparation for removal. *Id.* ¶ 38.

However, on March 10, 2026, after DHS obtained valid travel documents and scheduled Petitioner's removal, Petitioner filed a motion to reopen with the Immigration Court, together with a motion to stay removal. *Id.* ¶ 39. That same day, the Immigration Court granted a stay of removal while the motion to reopen remained pending. ECF No. [12-1] at 20. ICE returned Petitioner to the Krome North Service Processing Center on March 11, 2026, where he remained in custody. ECF No. [7-1] at 19.

On April 7, 2026, Petitioner filed his first habeas petition, and the Court entered an order stating that "Respondent[s] SHALL NOT transfer or otherwise move Petitioner from his current place of detention until further order of the Court." *Rodrigues Gomes v. Warden*, No. 26-cv-22377-KMW, ECF No. [4], Paperless Order filed on April 7, 2026 (S.D. Fla. 2026).

On June 1, 2026, the Immigration Court denied Petitioner's motion to reopen removal proceedings, thereby lifting the stay preventing Petitioner's removal. ECF No. [7-1] at 49–50.

On August 14, 2026, the Court denied Petitioner's first habeas petition. *Rodrigues Gomes v. Warden*, No. 26-cv-22377-KMW, ECF No. [17], Order filed on August 14, 2026 (S.D. Fla. 2026).

On August 20, 2026, three days later, Petitioner filed the instant habeas petition. ECF No. [1]. Petitioner asserts that the first requirement under *Zadvydas*

*v. Davis*, 533 U.S. 678, 687 (2001) is met because he has been detained more than six months since his removal order became administratively final. ECF No. [1-2] at 7. Petitioner further asserts that he provides "good reason to doubt" that his removal is reasonably foreseeable, namely that Respondents did not remove him despite obtaining travel documents in February 2026 and scheduling his removal in March 2026. *Id.* Petitioner also states that he "fear[s] death in Brazil" and "would accept lawful removal to Canda, Mexico, or Colombia if one of those countries agrees to admit [him]." *Id.* at 4, 16. Petitioner also adds that his "documented fear of death in Brazil should not be recast as obstruction" and that he "remain[s] willing to cooperate and accept removal to a third country that lawfully admits [him]." *Id.* at 8. Among other relief, Petitioner requests an order requiring his release under an order of supervision with reasonable conditions. *Id.* at 10.

On August 25, 2026, Respondents filed their Response to the Petition. ECF No. [9]. Respondents argue that the Petition should be denied because the Court lacks jurisdiction to adjudicate the Petition under 8 U.S.C. § 1252(g). *Id.* at 6−7. Next, Respondents argue that the Petition lacks merit because it is premature. *Id.* at 8−9. Specifically, Respondents argue that "even if one ignores Petitioner's own conduct in delaying the procurement of travel documents," the Petition is premature because it was filed twenty-two days before the expiration of the six-month period held to be presumptively reasonable under *Zadvydas*. *Id.* at 9. Finally, Respondents argue that the Petition also lacks merit because Petitioner has not met his burden under *Zadvydas* to demonstrate that his removal is not likely in the reasonably

foreseeable future. *Id.* at 9–11. On this point, Respondents add that "but for this Court's order prohibiting transfer of Petitioner out of the jurisdiction of this Court, there are no other impediments to removal, and removal is likely in the reasonably foreseeable future as ICE ERO has already successfully verified the Petitioner's identity with the Brazilian consulate." *Id.* at 11. Respondents also assert that "some of the delay about which Petitioner complains is his own doing," referencing his filing of the motion to reopen and motion to stay with the Immigration Court and his filing of habeas petitions which resulted in an order prohibiting his removal while the petitions remained pending. *Id.* at 10.

In reply, Petitioner maintains that his claim under *Zadvydas* is ripe because he has been detained in excess of six months following his removal order becoming final. ECF No. [16] at 1–2. Next, Petitioner argues that Respondents have failed to provide evidence rebutting that removal is not significantly likely in the reasonably foreseeable future. *Id.* at 2. Petitioner notes that Respondents have failed to provide evidence such as currently a valid travel document or a flight, itinerary, reservation, or removal date.[1] *Id.*

## II. ANALYSIS

District courts have the authority to grant writs of habeas corpus. See 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive

[1] Petitioner also states that "Respondent's principal factual source is the declaration of Supervisory Detention and Deportation Officer James R. Gamboa dated April 13, 2026, originally prepared [in connection with his first habeas petition]" and asserts

detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who shows that he is being held in custody in violation of the Constitution or federal law. See 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**A. 8 U.S.C. § 1252(g)**

Section 1252 is "Congress's comprehensive scheme for judicial review of removal orders." *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1256–57 (11th Cir. 2020). To be sure, this provision bars judicial review over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" 8 U.S.C. § 1252(g). It "is specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999). That said, "1252(g) is not to be construed broadly as a 'zipper' clause applying to the full universe of deportation-related claims, but instead as applying narrowly to only the three 'discrete' governmental actions enumerated in that subsection." *Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 960 (11th Cir. 2015) (citing *A.A.D.C.*, 525 U.S. at 472–73). "And although many other decisions or actions may be part of the deportation process, only claims that arise from one of the covered

---

that the declaration is now "stale." *Id.* at 3. The Court notes, however, that the declaration relied upon by Respondents was prepared by Deportation Officer Luis A. Crespo and dated August 24, 2026. ECF No. [7-1] at 2–7.

actions are excluded from [a court's] review. . . ." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (internal citations and quotations omitted).

Here, Petitioner's claim does not implicate the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders. Rather, Petitioner challenges the legality of his detention. Such claim is reviewable. *See Canal A Media Holding, LLC,* 964 F.3d at 1257–58 (claim was not barred by § 1252(g) where action did not fall into one of three categories as "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."); *see also Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *6 (D. Minn. Aug. 15, 2025) (petitioner's due process challenge was not barred by § 1252(g) as it did not "challenge the actions of Respondents in commencing proceedings, adjudicating cases, or executing removal orders."); *Vazquez v. Feeley,* No. 25-cv-01542, 2025 WL 2676082, at *8 (D. Nev. Sept. 17, 2025) ("[B]ecause Petitioner challenges the lawfulness of his detention during the pendency of his removal proceedings, it is not a challenge to one of the 'three discrete events along the road to deportation' that § 1252(g) applies to."); *Leal-Hernandez v. Noem,* No. 25-cv-02428, 2025 WL 2430025, at *5 (D. Md. Aug. 24, 2025) ("Petition[er] mounts a challenge solely to his continued custody. None of the cases the Government relies on pertain to cases in which a petitioner . . . pursued judicial review of his allegedly unconstitutional custody. In accordance with Supreme Court precedent and the plain language of the text, § 1252(g) does not bar [jurisdiction]."); *Sanchez v. LaRose*, No. 25-cv-2396, 2025 WL

2770629, at *2 (S.D. Cal. Sept. 26, 2025) ("Petitioner seeks only review of the legality of her detention, which does not require judicial intervention into the Attorney General's decisions to commence proceedings, adjudicate cases, and execute removal orders. . . . Adopting [the government's] interpretation of 8 U.S.C. § 1252(g) . . . would eliminate judicial review of immigration detainee's claims of unlawful detention[.]"); *Campos Leon v. Forestal*, No. 25-cv-01774, 2025 WL 2694763, at *1–2 (rejecting respondents' § 1252(g) argument and concluding that the court had jurisdiction to hear habeas petition challenging DHS' refusal to abide by the IJ's bond order).

Accordingly, section 1252(g) does not prevent this Court from exercising jurisdiction over the Petition.

### B. Detention Does Not Violate *Zadvydas*

The Court has jurisdiction over the Petitioner's claim that the length of his detention violates due process. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). Petitioner is subject to a final removal order and, thus, his detention is governed by Title 8 U.S.C. § 1231. Section 1231(a)(1) requires the Government to effectuate an alien's removal within a ninety-day "removal period." 8 U.S.C. § 1231(a)(1). During this removal period, the Government must detain the alien. 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). The government may detain an alien beyond the ninety-day removal period only for a length of time "reasonably

necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.

In *Zadvydas*, the Supreme Court considered the petitions of two resident aliens who challenged the constitutionality of their detentions pursuant to 8 U.S.C. § 1231(a)(6), which permits the Government to detain an alien subject to a final order of removal beyond the 90-day statutory removal period set forth in § 1231(a)(1). *Id.* at 682. Although no country was willing to accept either alien once they were ordered removed, the Government continued to detain them after the expiration of § 1231(a)(1)'s 90-day removal period. *Id.* at 684-86. The Supreme Court held that a detainee may file a petition for writ of habeas corpus to challenge the reasonableness of their continued detention when the Government is unable to effectuate removal within the 90-day removal period. *Id.* at 687.

The Supreme Court further held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute" because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690, 699. In so ruling, the Supreme Court explained that it is presumptively reasonable for the Government to detain an individual for a period of six months while it effectuates that individual's removal. *Id.* at 701. That said, after this six-month period, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and grant the petition for writ of habeas corpus, "conditioned on any of the various

forms of supervised release that are appropriate in the circumstances . . . ." *Id.* at 699–700.

Accordingly, to state a valid claim under *Zadvydas*, a petitioner must show (1) "post removal order detention in excess of six months," and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id.* (quoting *Zadvydas*, 533 U.S. at 701 ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

Here, Petitioner has not provided any evidence to establish that his removal is not significantly likely in the reasonably foreseeable future. Indeed, Respondents have provided a sworn declaration of an ICE deportation officer, which provides that "[b]ut for this Court's order prohibiting transfer of Petitioner out of the jurisdiction of this Court, there are no other impediments to removal, and removal is likely in the reasonably foreseeable future as ICE ERO has already successfully verified the Petitioner's identity with the Brazilian consulate."[2] *Id.* ¶ 52. Respondents have also

[2] As mentioned, Petitioner asserts in his Petition that he has a fear of returning to Brazil. *See* ECF No. [1-2] at 4, 16. The Court notes, however, that Petitioner's applications for asylum, withholding of removal under INA § 241(b)(3), withholding of removal under the Convention Against Torture, and deferral of removal under the Convention Against Torture were all withdrawn with prejudice. ECF No. [12-1] at 15. In addition, Petitioner's fear is not presently an impediment to his removal because Respondents have not yet determined that his fear is credible. If

submitted evidence showing that they had previously obtained travel documents for Petitioner and had scheduled his transfer and removal to Brazil. *Id.* ¶¶ 34−39. Respondents were unable to effectuate his removal because after obtaining valid travel documents and scheduling his removal, Petitioner filed a motion to reopen and a motion to stay removal with the Immigration Court, and the Immigration Court granted the stay of removal while the motion to reopen remained pending. *Id.* ¶¶ 38−40. However, the Immigration Court's stay of removal has since been lifted following the denial of Petitioner's motion to reopen removal proceedings. *Id.* ¶¶ 45–46. After the Immigration Court's stay of removal was lifted, Respondents were still unable to effectuate his removal because they were subject to an order prohibiting his removal while his first habeas petition remained pending. *Id.* ¶¶ 43–45. Three days after his first habeas petition was denied, Petitioner filed the instant Petition, and the Court entered an order prohibiting Petitioner's removal while the instant Petition remained pending. *Id.* ¶¶ 49–50. Petitioner offers no evidence showing that Petitioner's removal process cannot be replicated and culminate in his removal to Brazil once the Court's order prohibiting his removal is lifted. Because the second prong of the *Zadvydas* is not met, Petitioner's claim under *Zadvydas* fails.[3]

---

Respondents determine that his fear is not credible, they can proceed with effectuating his removal to Brazil. If Respondents determine that his fear is credible, Petitioner has expressed a willingness to be removed to a third country. *See* ECF No. [1] at 8. And, on this record, there is no evidence that Respondents could not effectuate his removal to a third country, if needed.

[3] Petitioner and Respondents disagree on whether the first prong is met. See ECF Nos. [1-2] at 7; [9] at 8–9. For purposes of this analysis, the Court assumes that

## II. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Petitioner's Verified Petition for Writ of Habeas Corpus, ECF No. [1], is **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to **CLOSE** this case and **DENY** any pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 7th day of October, 2026.

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**

Petitioner has met the first prong because even if this prong is met, his claim still fails under the second prong.